```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


STEFANY L. SCHASSAR,                  )
                                      )
              Plaintiff,              )
                                      )   CIVIL ACTION
v.                                    )
                                      )   No. 08-2546-JWL–GBC
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
              Defendant.              )
_____)
```

**REPORT AND RECOMMENDATION**

Via the court's Case Management/Electronic Case Filing (CM/ECF) system, on March 11, 2009 plaintiff filed a "Motion for Judgment, Motion for Judgment on the Pleadings" (Doc. 7), seeking review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The court finds plaintiff improperly filed her motion, finds no error as alleged in plaintiff's brief, and recommends the decision of the Commissioner be AFFIRMED.

**I.   Background**

Plaintiff filed applications for DIB and SSI which were denied initially and upon reconsideration, and plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 14). Plaintiff's request was granted, and plaintiff appeared at a hearing before ALJ William G. Horne. Id. At the hearing plaintiff was represented by counsel, and testimony was taken from plaintiff and from a vocational expert (VE). (R. 14, 27-68). Thereafter, the ALJ issued a decision in which he found plaintiff is not disabled within the meaning of the Act and the regulations, and denied the applications. (R. 14-21).

The ALJ found that plaintiff has not performed substantial gainful activity since her alleged onset date, and that she has a combination of impairments consisting of mild degenerative joint disease, and chronic cervical and low back pain which is "severe" within the meaning of the Act and the regulations. (R. 15). He found that plaintiff's combination of impairments does not meet or equal the severity of a listed impairment. Id.

The ALJ considered the evidence, plaintiff's allegations, and the medical opinions, and assessed plaintiff with the residual functional capacity (RFC) to lift, carry, push, or pull ten pounds; to stand and/or walk about two hours in a workday, and to sit about six hours in a workday, if she has an option to alternate sitting and standing at thirty minute intervals. (R. 18). He determined that plaintiff must be limited to simple,

routine, repetitive work with no repetitive use of the hands and no repetitive overhead lifting or reaching; and may only perform occasional bending, and no crawling, kneeling, or crouching.  (R. 18-19).  Based upon this RFC, the ALJ determined plaintiff is unable to perform her past relevant work, but that there are a substantial number of jobs existing in the economy of which plaintiff is capable, represented by jobs such as an order clerk (DOT[1] # 209.567-014), a production checker (DOT # 669.687-014), and an administrative support worker (DOT # 209.587-010).  (R. 19).  Consequently, the ALJ found plaintiff is not disabled within the meaning of the Act, and denied her applications.  (R. 19, 20-21).

Plaintiff sought review of the ALJ's decision in June 2007, and fifteen months later, the Appeals Council denied the request. (R. 2-9).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 2-4); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the

---

[1] DOT is the "Dictionary of Occupational Titles."  (R. 19)

record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her

age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that

prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

### III. Discussion

As a preliminary matter, the court notes that plaintiff filed her Social Security Brief as a "Motion for Judgment, Motion for Judgment on the Pleadings."  (Doc. 7).  In accordance with the law of the Tenth Circuit, such a motion is not the proper vehicle for securing review of a decision of the Commissioner of Social Security.  Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1580 (10th Cir. 1994); See also, Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1503-04 (10th Cir. 1992) (Kane, J. concurring) (writing separately to condemn use of "Motion to Affirm" in Social Security review).

Moreover, such a motion is unnecessary to secure review in this district.  Judicial review of the Commissioner's orders are governed by local rule.  D. Kan. Rule 83.7.1.  Pursuant to that rule, plaintiff is to file a brief within forty-five days after the record is filed with the court, the Commissioner will file a brief in response within thirty days, and plaintiff may file a reply brief within fourteen days thereafter.  Id. 83.7.1(d).  The court will then review the Commissioner's decision.

In the CM/ECF system for electronic filing, the court has provided a means to file the requisite briefs.  When an attorney is ready to file a Social Security brief on the CM/ECF system, he should sequentially select the "Civil" menu bar, select "Responses and Replies" under the "Motions, Supporting Documents, Responses, Replies & Social Security" heading, and select either "Social Security - Commissioners Response Brief," "Social Security - Plaintiffs Initial Brief," "Social Security - Plaintiffs Reply Brief," or "Social Security - Surreply Brief," as appropriate from the "Available Events" box that next appears. He should complete filing from that point.  Following the correct procedure will ensure that the brief is properly docketed.  No additional motions or memoranda are required.  To the extent plaintiff's brief constitutes a "Motion for Judgment," the court recommends the Motion be DENIED as improperly filed.

### A. The Parties' Arguments

Plaintiff makes two related claims of error.  She first claims that the ALJ erred in finding no conflict between the vocational expert (VE) testimony and the <u>Dictionary of Occupational Titles</u> (DOT) job descriptions for the representative jobs relied upon.  She then claims there are numerous conflicts between the DOT and the VE testimony, and the ALJ should have addressed and explained the conflicts.  (Pl. Br. 4).  In her brief, plaintiff noted that the VE testified that each of the

representative jobs require "no repetitive use of the hands," but claims the DOT job description for each job requires repetitive work, significant handling, and frequent use of the hands in reaching, handling, or fingering from one-third to two-thirds of a workday.[2]  She also argues that in accordance with the DOT two of the representative jobs require reasoning level two or level three which is in conflict with the VE's testimony that each job requires "only, simple, routine, repetitive work."  Therefore, in plaintiff's view there are conflicts between the DOT and the VE testimony despite the contrary assertion of the VE, and the ALJ was required, but failed, to address the conflicts.

The Commissioner argued that the ALJ satisfied his duty to inquire about conflicts between the DOT and the VE testimony. Further, he argued that although the Tenth Circuit has previously determined level three reasoning is inconsistent with "simple and routine" work, this case can be distinguished because plaintiff has no severe mental impairments, and in any case the remaining two jobs comprise a significant number of jobs in the economy of which plaintiff is capable.  With regard to use of the hands, the Commissioner argued that "frequent" and "repetitive" are not the same thing, "significant handling" as relevant to a job as a

---

[2]The court is aware that not all conflicts regarding use of the hands alleged in plaintiff's brief apply to all jobs. However, the court considered each argument, and finds no error in the decision even if all of the alleged conflicts applied to any or all job(s).

"dowel inspector" is not equivalent to "repetitive handling," and frequent reaching, handling, and fingering, even when applied to the same job does not equate to continuous or even repetitive use of the hands. (Comm'r Br. 11-12). The Commissioner pointed out that plaintiff was given the opportunity to question the VE, but did not ask about the conflicts of which she now complains, and the ALJ is entitled to rely upon the VE testimony, especially since "The whole point of vocational expert testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof." (Comm'r Br. 12-13)(quoting Rogers v. Astrue, 2009 WL 368386, at *4 (10th Cir. 2009)). The court agrees with the Commissioner.

### B. Standard for Evaluating Conflicts Between VE Testimony and the DOT

In November, 1999, the Tenth Circuit decided that before an ALJ may rely on VE testimony, the ALJ has a duty to ask the VE how the testimony corresponds with the DOT and to elicit a reasonable explanation for any conflict. Haddock, 196 F.3d at 1089. The court made clear that the DOT does not "trump" VE testimony, but rather the ALJ has a duty to investigate and get a reasonable explanation before he may rely on the VE testimony. Id. at 1091. On June 20, 2000, the Commissioner published Acquiescence Ruling 00-3(10) in which she explained that she would apply the holding of Haddock within the Tenth Circuit

-9-

although that holding conflicted with her interpretation of the Act. Acquiescence Ruling 00-3, West's Soc. Sec. Reporting Serv., Rulings, 570 (2009 Supp.). Thereafter, the Commissioner published Social Security Ruling (SSR) 00-4p, effective December 4, 2000. West's Soc. Sec. Rep. Serv., Rulings, 242 (Supp. 2009). In SSR 00-4p, the Commissioner rescinded Acquiescence Ruling 00-3(10), and established a policy interpretation for the use of VE testimony and "Other Reliable Occupational Information in Disability Decisions." Id. at 243.

In the ruling, the Commissioner placed two duties on an ALJ. First, the ALJ must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)." Id. (emphasis added). Second, the ALJ must "[e]xplain in the determination or decision how any conflict that has been identified was resolved." Id. Thus, SSR 00-4p places the affirmative responsibility on the ALJ to "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT," and where VE "evidence appears to conflict with the DOT, . . . [to] obtain a reasonable explanation for the apparent conflict." Id. at 246.

**C.   The ALJ's Inquiry and the Decision at Issue**

At the hearing, plaintiff's attorney stated that she had no objection to the VE testifying as an expert. (R. 60). Thereafter, the ALJ examined the VE. (R. 60-62, 64-66). He elicited testimony that a person of the age, work experience, and education of plaintiff, with the RFC assessed for plaintiff would be unable to do plaintiff's past work, but could perform work such as the representative jobs discussed herein. Id. At the end of his examination, the ALJ asked, "And with the exception of the sit/stand option, does your testimony, ma'am, in any way conflict with any provision of the DOT?" (R. 66). The VE responded, "No conflict." Id. At that point, the ALJ turned the examination over to plaintiff's attorney, who asked questions of the VE relating to allowable breaks in a workday, allowance for missing work, and problems with concentration. (R. 67). In his decision, the ALJ noted, "The vocational expert testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT), except that the DOT does not mention a sit/stand option." (R. 19).

### D. Analysis

Plaintiff's claims fail. First, as required by the law and the rulings, the ALJ asked if there were inconsistencies between the VE testimony and the DOT. (R. 66). The VE replied that there were none. Id. The ALJ fulfilled his first duty pursuant to SSR 00-4p. Plaintiff was given an opportunity to cross-

examine the expert, and although she did so, she did not suggest in any way that there were conflicts between the VE testimony and the DOT. (R. 67). Thus, <u>the administrative record</u> contains no evidence that the VE testimony and the DOT are inconsistent in the manner alleged by plaintiff before this court, and no hint that the ALJ's second duty pursuant to SSR 00-4p was triggered.

Plaintiff argues directly from the listings in the DOT that there are, in fact, inconsistencies. An ALJ must take administrative notice of the DOT listings as authoritative information regarding jobs in the economy, and where the ALJ has not done so the court in appropriate circumstances will do so. However, neither the ALJ, this court, plaintiff, nor plaintiff's counsel are experts in vocational matters with the expertise to interpret the DOT contrary to the interpretation given by the VE. If plaintiff questioned the VE testimony, she could and should have explored the issue on her examination of the VE. The court may not reweigh the evidence or make its decision based on evidence outside the record. The only evidence of record is that the DOT is consistent with the VE testimony. Therefore, the court finds no error in the ALJ's decision to rely upon the VE testimony.

Second, a review of the DOT in light of the administrative record confirms that there are no inconsistencies between the DOT and the VE testimony. Plaintiff first claims that level two and

level three reasoning as noted by the DOT are inconsistent with simple, routine, repetitive work despite the VE's testimony that plaintiff can perform the jobs of an order clerk and an addresser (administrative support worker).  (Pl. Br. 6, 7).  This is so she argues because the abilities to understand and carry out instructions (or detailed instructions), and to deal with problems regarding several variables (or variables above standard situations) are not consistent with simple, routine, repetitive work.  Id.  However, other than the persuasive force of her attorney's reasoning, plaintiff provides no vocational, legal, or other authority in support of the propositions asserted.

    In his response brief, the Commissioner acknowledged that the Tenth Circuit has held that level three reasoning is inconsistent with simple and routine work, but that in the same case the court concluded that level two reasoning appeared consistent with simple and routine work.  (Comm'r Br. 9)(citing Hackett, 395 F.3d at 1176).  The Commissioner distinguished Hackett, noting that in Hackett the claimant had severe depression and anxiety whereas here plaintiff neither has nor alleges any severe mental impairments.  Id. at 9, n.3.  Alternatively, the Commissioner argued that even if the job of an order clerk is eliminated because it is reasoning level three, the other two representative jobs demonstrate a significant

number of jobs in the economy of which plaintiff is capable.  (R. 10).

The court finds Hackett is not controlling in the circumstances of this case.  In Hackett, the ALJ stated that the VE acknowledged conflicts between his opinion and the DOT, and "explained this discrepancy by relying on his own 'education, experience and observations of the jobs as actually performed in the economy.'"  Id., 395 F.3d at 1175(quoting the record on appeal).  However, as the circuit court noted, "there is no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered any explanation."  Id.  Here, on the other hand, the record is absolutely clear that the VE stated there was no conflict with the DOT other than in allowing a sit/stand option.  (R. 66).

In Hackett, as the Commissioner argues, the claimant had depressive and anxiety symptoms, id. at 1174, and one of the issues considered and favorably decided by the circuit court was the weight accorded to treating physician opinions with regard to plaintiff's mental impairments.  Id. at 1173-74.  The circuit court found the ALJ properly assessed the treating physicians' opinions.  Id.  The ALJ had assessed plaintiff with significant limitations resulting from mental impairments:

> With regard to her mental limitations, the ALJ found
> that Plaintiff "retains the attention, concentration,
> persistence and pace levels required for simple and
> routine work tasks."  She can perform work under

-14-

> general supervision, "but needs to work in a low stress
> environment and avoid direct contact with the general
> public and have only occasional interaction with co-
> workers." Plaintiff is moderately restricted in
> "following work rules and responding to supervision."

Id. at 1171-72(quoting the administrative record)(citations omitted). The court's holding that plaintiff was unable to perform level three reasoning was specifically based upon the ALJ's finding that "Mentally, [Plaintiff] retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." Id. at 1176.

Here, plaintiff does not have, and does not allege mental impairments. The only severe impairments found were physical impairments. While it is likely the ALJ limited plaintiff to simple, routine, repetitive work at least in part because of her use of a morphine-based pain medication, there is no indication that her reasoning level was restricted. Moreover, plaintiff does not argue that the ALJ improperly evaluated her use of morphine or that this use itself requires a finding that she is disabled. The VE testified that the representative jobs requiring reasoning level two or level three are available to an individual like plaintiff and that there are no conflicts between the DOT and the VE testimony. There is no contrary vocational evidence presented. Plaintiff has shown no conflict with regard to reasoning level.

In her final claim of error (regarding repetitive use of the hands) plaintiff argued that the representative jobs require reaching, handling, or fingering frequently (from one-third to two-thirds of the time), and that the tasks when considered together require use of the hands continually, or one hundred percent of the time; that the jobs require "significant" handling; and that they require "performing REPETITIVE or short-cycle work." (Pl. Br. 6-7). Again, other than the persuasive force of her attorney's reasoning, plaintiff provided no vocational, legal, or other authority in support of the propositions asserted or implied:  that reaching, handling, and fingering which are each required to be done one-third to two-thirds of a workday, when considered in total require use of the hands for one hundred percent of the workday; that use of the hands for one hundred percent of the workday equates to repetitive use of the hands; that frequent use equates to repetitive use of the hands; that "significant" handling equates to repetitive use of the hands; or that "performing REPETITIVE or short-cycle work," equates to repetitive use of the hands.

The Commissioner argued that "frequent" and "repetitive" are not synonymous; that "significant handling" does not equate to "repetitive handling;" and that reaching, handling, and fingering may be done at the same time, so that "frequent" reaching, handling, and fingering is not necessarily continuous or even

-16-

repetitive use of the hands.  (Comm'r Br. 11-12)(citing DOT; and Gallegos v. Barnhart, No. 03-2072, 2004 WL 1203031, at *2 (10th Cir. June 2, 2004)).

As the Commissioner asserts, the Tenth Circuit has explained that frequent use of the hands is not equivalent to repetitive use of the hands because frequent use of the hands is from one-third of a workday to two-thirds of a workday while repetitive use of the hands is from two-thirds to one hundred percent of the workday.  Gallegos, 2004 WL 1203031 at *2.  Moreover, there is no authority presented for the assumptions that significant handling equates to repetitive use of the hands, that repetitive or short-cycle work requires repetitive use of the hands, or even that frequent reaching, handling, and fingering when occurring together require a finding of repetitive use of the hands.

One might superficially argue that since frequent reaching, handling, and fingering involve at least one-third of the workday, adding them together would result in one hundred percent of the workday--which is by definition repetitive use of the hands.  However, reaching, handling, and fingering may be done simultaneously, resulting in a situation where there is no repetitive use of the hands.

As the Commissioner argued, the point of VE testimony is to go beyond the publications of which an ALJ may take administrative notice.  (Comm'r Br.)(citing Rogers v. Astrue, No.

-17-

08-4138, 2009 WL 368386 at *4 (10th Cir. Feb. 17, 2009)); see also Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993)("Indeed, what would be the point of vocational testimony (or expert testimony in general) if it could not reach beyond matters already established through administrative (or judicial) notice?"); 20 C.F.R. 404.1566(d & e)(an ALJ may take notice of reliable job information and may use a vocational expert); and SSR 00-4p, West's Soc. Sec. Reporting Serv., Rulings 245 (Supp. 2009)(information about occupations not listed in the DOT may be available from a VE's experience).  Here, the ALJ secured VE testimony regarding the representative jobs at issue.  The VE testified the jobs did not involve repetitive use of the hands, and further testified that her testimony was consistent with the DOT.  Plaintiff provides lay argument, but no legal or vocational authority or evidence from the administrative record, that an inconsistency exists.  Plaintiff does not argue that the VE lacks the expertise to testify as to these issues, and at the hearing made no objection to the VE testifying as an expert.  (R. 60).  In these circumstance, the court will not reject the VE's testimony.  Plaintiff has not shown a conflict between the DOT and the testimony of the VE, and makes no other allegation of error in the decision at issue.

    **IT IS THEREFORE RECOMMENDED** that plaintiff's "Motion for Judgment, Motion for Judgment on the Pleadings" (Doc. 7), be

-18-

denied as improperly filed, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this <u>18th</u> day of September 2009, at Wichita, Kansas.

s/ Gerald B. Cohn  
**GERALD B. COHN**  
**United States Magistrate Judge**
